842 A.2d 140

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
SHAWN MILNE, DEFENDANT–RESPONDENT.

Argued November 17, 2003—Decided March 2, 2004.

488

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

*Mark A. Berman* argued the cause for respondent (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

*Robert L. Sloan,* Assistant Deputy Public Defender, argued the cause for amicus curiae, Office of the Public Defender (*Yvonne Smith Segars,* Public Defender, attorney).

Justice VERNIERO delivered the opinion of the Court.

The subject of this criminal appeal is defendant's second petition for post-conviction relief (PCR). The trial court denied the petition after concluding that defendant had filed it over ten years after the underlying conviction and over five years after the relevant case law allowed him to seek relief. The Appellate Division remanded the matter to the trial court with instructions to conduct a plenary hearing. We are persuaded to reverse the Appellate Division and to hold that defendant's petition procedurally is barred.

I.

This appeal comes to us with a lengthy history. We summarize only so much of that history as is relevant to our disposition. In 1987, defendant was tried and convicted of sexually assaulting and murdering a thirteen-year-old girl. (The offenses occurred two years earlier.) His counsel considered, but ultimately did not present, a diminished-capacity defense. At the time of trial that defense was governed by a version of *N.J.S.A.* 2C:4–2 that a federal court later found unconstitutional. In *Humanik v. Beyer,* the United States Court of Appeals ruled that the statute had created a " 'preponderance of the evidence' filter" that impermissibly relieved the State of its obligation to prove each element of a crime beyond a reasonable doubt. 871 *F.*2d 432, 443 (3d Cir.), *cert. denied,* 493 *U.S.* 812, 110 *S.Ct.* 57, 107 *L.Ed.*2d 25 (1989).

Through a written advisory by then-Chief Justice Wilentz, this Court responded to the *Humanik* decision by directing trial courts to no longer require a defendant raising the diminished-capacity defense to prove the asserted disease or defect by a preponderance of the evidence. *Court Asks Legislature to Review Refuted Law,* 124 *N.J.L.J.* 1133 (Nov. 2, 1989). We extended that directive to appeals as of December 8, 1989, but cautioned that that fact "does not require a reversal of every case presenting a diminished-capacity issue" because "[o]ther appellate principles may dic-

tate a different result." *Advisory,* 124 *N.J.L.J.* 1562 (Dec. 28, 1989).

Although defendant's direct appeal was pending as of the date of our second *Humanik* directive, defendant did not raise the diminished-capacity question when he appealed his conviction to this Court in a petition for certification dated December 15, 1989. We denied that petition. 121 *N.J.* 612, 583 *A.*2d 313 (1990). Around the same time, the Legislature revised the statute in response to *Humanik. L.* 1990, *c.* 63, § 1; *see also* Cannel, *New Jersey Criminal Code Annotated,* comment 1 on *N.J.S.A.* 2C:4–2 (2003) (summarizing *Humanik's* impact on statute).

In *State v. Culley,* the Appellate Division concluded that this Court's prior *Humanik* directives applied only to pending appeals and future trials, not to PCR petitions. 250 *N.J.Super.* 558, 564, 595 *A.*2d 1098, *certif. denied,* 126 *N.J.* 387, 599 *A.*2d 164 (1991). Notwithstanding that determination, defendant filed his first PCR petition on July 21, 1992, about a year after *Culley,* in which he asserted three claims of error, including a *Humanik* claim. Specifically, he contended that his due-process rights had been violated "in that defendant was unable to pursue a diminished capacity defense pursuant to *N.J.S.A.* 2C:4–2, which at the time of defendant's trial placed the burden of proving the existence of the mental disease or defect by a preponderance of the evidence on the defendant." The trial court denied defendant's petition. In appealing to the Appellate Division, defendant abandoned his *Humanik* claim. The Appellate Division affirmed the trial court's denial of defendant's petition, and we denied certification on November 16, 1994. 139 *N.J.* 186, 652 *A.*2d 174 (1994).

On June 5, 1995, we implicitly overruled *Culley* by addressing a *Humanik* claim in a PCR context in *State v. Reyes,* 140 *N.J.* 344, 362–65, 658 *A.*2d 1218 (1995). Over five years after we decided *Reyes,* defendant filed a PCR petition dated August 16, 2000 (the second and present petition), in which he again raised the *Humanik* issue. The trial court denied that petition as well. In a reported opinion the Appellate Division reversed, directing the

trial court to conduct a plenary hearing to determine whether defendant could present sufficient proof of diminished capacity under a proper post-*Humanik* standard if permitted to do so at a new trial. *State v. Milne,* 355 *N.J.Super.* 355, 371, 810 *A.*2d 588 (2002). We granted the State's petition for certification. 175 *N.J.* 434, 815 *A.*2d 480 (2003).

## II.

■ The legal principles governing this dispute are straightforward. "Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." *State v. Preciose,* 129 *N.J.* 451, 459, 609 *A.*2d 1280 (1992). At the heart of this appeal is *Rule* 3:22–12, which establishes a five-year time limit for the filing of most PCR petitions. Specifically, the *Rule* provides that

[a] petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.

[*R.* 3:22–12(a).]

■ In the usual case "[t]he five-year period commences from the time of the conviction or the time of the sentencing, whichever the defendant is challenging." *State v. Goodwin,* 173 *N.J.* 583, 594, 803 *A.*2d 102 (2002). We have explained:

There are good reasons for [*Rule* 3:22–12]. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. Those difficulties have not gone unnoticed by our courts. *See, e.g., State v. Dillard,* 208 *N.J.Super.* 722, 727, 506 *A.*2d 848 (App.Div.) ("with the passage of time it may become more difficult to rule upon the allegations in a petition for post-conviction relief . . . ."), *certif. denied,* 105 *N.J.* 527, 523 *A.*2d 169 (1986); *State v. Marshall,* 244 *N.J.Super.* 60, 69, 581 *A.*2d 538 (Law Div.1990) (faced with the potential prospect of evaluating the constitutionality of a twenty-two-year-old conviction, "it would be a practical impossibility . . . to conduct a proper hearing"). Moreover, the [*Rule* ] serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The [*Rule* ] therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.

[*State v. Mitchell*, 126 *N.J.* 565, 575–76, 601 *A.*2d 198 (1992).]

The five-year time limit is not absolute. "[A] court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the 'interests of justice' demand it." *Goodwin, supra,* 173 *N.J.* at 594, 803 *A.*2d 102 (internal citation omitted). We have observed that "[t]he court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." *State v. Afanador,* 151 *N.J.* 41, 52, 697 *A.*2d 529 (1997) (internal citation omitted). "Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." *Ibid.*

### III.

There is no dispute that defendant's petition is governed by the five-year filing period. Defendant argues that this case is unique given its procedural history and the nature of his claim, thereby warranting relaxation of the filing bar. We acknowledge that this case is unusual in some respects given the unsettled state of the law engendered by the *Humanik* decision. Yet, viewing the record indulgently within that anomalous context, we conclude that defendant had two opportunities to assert his claims in a timely fashion but failed to do so at each juncture. The result is that the State would be significantly prejudiced if now forced to relitigate issues pertaining to crimes and a trial that occurred nearly two decades ago.

Before turning to the PCR process, we briefly comment on defendant's direct appeal. Defendant did not raise the diminished-capacity issue while his direct appeal was pending, notwithstanding that this Court's *Humanik* directives seemingly would have permitted it. That fact alone, argues the State, should bar defendant's petition. See *Afanador, supra,* 151 *N.J.* at 50, 697 *A.*2d 529 (instructing that PCR petition "cannot be used to circum-

vent issues that could have, but were not raised on appeal"). Although we see some merit in the State's argument, we are satisfied that defendant could not have reasonably raised the issue in his direct appeal given the overlapping nature of that appeal and our *Humanik* directives. See *State v. Nash*, 64 *N.J.* 464, 475, 317 *A.*2d 689 (1974) (stating in different setting that "we hesitate to make the availability of a retroactive principle in a criminal context turn on whether an attorney has read recent advance sheets").

Defendant's first realistic opportunity to seek relief occurred in 1992 when he filed his initial PCR petition. Although that petition included a *Humanik* claim, defendant abandoned that claim on appeal. Defendant asserts that he so acted in good-faith reliance on *Culley*. That explanation is belied by the fact that the Appellate Division decided *Culley* about a year *before* defendant filed his petition with the trial court. In other words, given the fact that he had included a *Humanik* claim when he first filed the petition, defendant appears not to have been encumbered by *Culley*. In any event, irrespective of how he might have viewed *Culley*, nothing prevented defendant from challenging the effects of that intermediate appellate court decision before this Court as a different defendant essentially did in *Reyes*.

For purposes of today's appeal, we are willing to look past defendant's first PCR petition and consider defendant's second purported opportunity to assert his claims. That opportunity came after this Court filed *Reyes*. Assuming that the date of the *Reyes* decision, June 5, 1995, triggered the five-year clock for the filing of defendant's second PCR petition, defendant exceeded that time frame when he filed that petition, which is dated August 16, 2000. Defendant's cumulative delay leaves the judiciary with the prospect of evaluating the propriety of a sixteen-year-old criminal conviction, with all the difficulties and hardships to the system that would attend such an endeavor. Consistent with our prior case law, we cannot sanction that prospect absent compelling circumstances.

Asserting that such circumstances do exist, defendant suggests that his delay in filing a timely PCR petition is attributable to his pursuing federal habeas relief under the short deadline of the Antiterrorism and Effective Death Penalty Act of 1996, 28 *U.S.C.A.* § 2244. In that regard, defendant filed a federal petition on April 15, 1997, in which he raised the *Humanik* issue. Thereafter, on October 21, 1999, the district court stayed the petition, observing "that the New Jersey courts may yet permit [defendant] to file a new post-conviction petition raising his diminished-capacity claim." The federal court also stated that this Court's ruling in *Reyes,* occurring as it did after defendant had filed his first PCR petition, "may well be an exceptional circumstance which would permit a new post-conviction petition on the diminished-capacity claim."

We are not persuaded by defendant's argument for two reasons. First, a defendant's pursuit of federal review ordinarily would not extend the time frame within which to file a PCR petition in State court. Pressler, *Current N.J. Court Rules,* comment on *R.* 3:22–12 (2004) (observing that, pursuant to case law, calculation of five-year period under *Rule* 3:22–12 "commences when the judgment of conviction is entered and is neither stayed nor tolled by appellate or other review proceedings"). Second, as already noted, we are willing to give defendant the benefit of the *Reyes* decision as suggested by the federal district court. In so doing, we still are left with the fact that defendant failed to file his second petition within five years of that decision, and defendant has demonstrated no excusable neglect to justify that failure.

More broadly, we reject the notion that defendant did not appreciate his procedural rights until after being informed by the federal district court that he might be entitled to seek State review of his *Humanik* claim. That option could have been pursued well before the federal court's decision and should have been known to defendant many years ago. He simply did not avail himself of it in a diligent fashion. Additionally, we cannot

help but observe that defendant waited almost a year after the district court's decision to file his second PCR petition. Had he acted more promptly after the federal court stayed his habeas petition on October 21, 1999, defendant could have filed his second PCR petition by June 5, 2000, which would have been within five years of *Reyes*. Measured against the extended backdrop of this case, including two opportunities to proceed with a *Humanik* claim within two separate five-year periods, defendant has provided us with no compelling reason to relax the procedural bar of *Rule* 3:22–12. Under the totality of circumstances, we see no injustice in that conclusion.

Lastly, although we dispose of this appeal solely on procedural grounds, we comment briefly on the merits of defendant's claim. According to her statement, defendant's original trial counsel considered the diminished-capacity defense and rejected it, explaining that she "did not believe that the defense would be able to sustain its burden of proving the existence of a mental disease or defect by a preponderance of the evidence, as required by the diminished capacity statute at that time." That explanation suggests that defendant's diminished-capacity defense would not have been strong. Indeed, we know from the pre-trial examination of defendant by a prosecution expert that the State rigorously would have contested such a defense.

Although it ruled that defendant's PCR petition was time-barred, the trial court in this case also commented on the petition's merits. The court expressed the view that forgoing the diminished-capacity defense was a "calculated, strategic decision" because the defense "had too many holes in it." The Appellate Division itself suggested some doubt when it stated that one of the tasks of the trial court on remand would be to determine whether the proffered proof is "too weak and vague to create a jury issue on diminished capacity under controlling case law[.]" *Milne, supra,* 355 *N.J.Super.* at 359, 810 *A.*2d 588. In short, there must be a stronger sense of the claim's merit than is apparent here before relaxing the procedural bar and requiring the State at a

plenary hearing to relitigate aspects of a sixteen-year-old conviction.

### IV.

The judgment of the Appellate Division is reversed.

Justice LONG, dissenting.

I would affirm the decision of the Appellate Division substantially for the reasons expressed in Judge King's thorough and thoughtful opinion. Like Judge King, I view defendant's *Humanik*[1] argument as a substantial one that "goes to the fundamental principle of the adversarial process, the State's obligation to prove every element of the crime beyond a reasonable doubt." *State v. Milne*, 355 *N.J.Super.* 355, 370, 810 *A.2d* 588 (App.Div.2002). I likewise adhere to the view that

> when meritorious issues are raised that require analysis and explanation, our traditions of comprehensive justice will best be served by decisions that reflect thoughtful and thorough consideration and disposition of substantive contentions.
>
> [*State v. Preciose*, 129 *N.J.* 451, 477–78, 609 *A.2d* 1280 (1992) (holding that defendant's Post Conviction Relief (PCR) claims not procedurally barred for failing to raise on direct appeal).]

Moreover, I do not concede the majority's conclusion that defendant unreasonably delayed in this case, warranting imposition of a procedural bar. As Judge King trenchantly observed:

> This issue unfortunately has evaded forthright consideration to date in this case. Without dispute, the defendant, tried as an adult for a crime committed at age fifteen, potentially was impeded at trial in pursuing a diminished capacity defense by an unconstitutional statute, *N.J.S.A.* 2C:4–2.
>
> After defendant's trial and the rejection of his direct appeals in 1990, the *Humanik* issue was raised by him in a timely manner in his first PCR petition filed in July 1992. The Law Division judge, in March 1993, denied this PCR petition on the ground that *Humanik* did not apply to PCR petitions, relying upon *State v. Culley*, 250 *N.J.Super.* 558, 564, 595 *A.2d* 1098 (App.Div.1991). Appellate counsel (not present counsel) for defendant inexplicably failed to pursue the *Humanik* issue on

---

[1] *Humanik v. Beyer*, 871 *F.2d* 432 (3d Cir.), *cert. denied*, 493 *U.S.* 812, 110 *S.Ct.* 57, 107 *L.Ed.2d* 25 (1989).

the appeal, which was affirmed by this court in August 1994. *Our Supreme Court denied certification in November 1994.* 139 *N.J.* 186, 652 *A.*2d 174 (1994).

In June 1995, eight months after defendant's PCR petition was rejected by our courts, our Supreme Court rejected *Culley,* and entertained a *Humanik* claim in a PCR proceeding. [*State v.*] *Reyes,* 140 *N.J.* [344] 358, 365, 658 *A.*2d 1218 [ (1995) ]. Thus, not until 1995 was defendant clearly entitled to pursue his *Humanik* claim which he had timely raised in his first PCR petition in 1992. He pursued federal habeas relief in 1997. The State opposed the petition, relying in part on defendants failure to exhaust available state remedies. In October 1999, federal Judge Cooper stayed the proceeding before her to permit exhaustion of state court remedies. This routed defendant back to state court where he filed this second PCR petition in 2000.

We cannot criticize current counsel for resorting to federal court in this circumstance. Nor do we think it appropriate now to deny a plenary hearing in state court on the *Humanik* issue, given the complex procedural history in this case. *See State v. Afanador,* 151 *N.J.* 41, 53, 697 *A.*2d 529 (1997).

[*Milne, supra,* 355 *N.J.Super.* at 370–71, 810 *A.*2d 588.]

Further, I note that the Appellate Division limned a fair procedure for the remand hearing including the requirement that defendant prove that the pre-*Humanik* statute dissuaded him from presenting a diminished-capacity defense *and* that there is a legitimate jury question regarding whether he suffered from diminished capacity at the time of the crime. *Id.* at 371–72, 810 *A.*2d 588. Failure of defendant to meet that burden will end the inquiry. That process is not such a hardship on the State that it would warrant closing the door on defendant here.

Finally, nothing in this opinion should be viewed as a commentary on the merits of defendant's claim. It may indeed fail due to its inherent flaws and weaknesses. This is simply not the venue for such a determination.

*For reversal*—Chief Justice PORITZ and Justices VERNIERO, LaVECCHIA, ALBIN and WALLACE—5.

*For affirmance*—Justice LONG—1.