

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2004

# Johnson v. Pinchak

Precedential or Non-Precedential: Precedential

Docket No. 04-1307

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Johnson v. Pinchak" (2004). *2004 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1307

———

GEORGE JOHNSON

v.

STEVEN PINCHAK; ATTORNEY GENERAL OF THE STATE OF
NEW JERSEY,

*Appellants*

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 99-cv-00685)
District Judge: Honorable Katharine S. Hayden

———

Argued November 1, 2004
Before: ALITO, FUENTES, and BECKER, *Circuit Judges*.

(Filed:    December 22, 2004)

JEAN D. BARRETT (Argued)
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
        *Attorney for Appellee*

PAUL H. HEINZEL (Argued)
Office of Attorney General of New Jersey
Division of Criminal Justice
Richard J. Hughes Justice Complex
Trenton, New Jersey 08625-0086
    *Attorney for Appellant*

## OPINION OF THE COURT

BECKER, *Circuit Judge*.

When petitioner, George Johnson, pled guilty to felony murder under the misapprehension that he was eligible for the death penalty for that crime, felony murder in New Jersey was not in fact a capital offense. However, after receiving a sentence of life imprisonment with thirty years parole ineligibility and after exhausting his state remedies, Johnson sought federal habeas corpus relief alleging ineffective assistance of counsel and involuntariness of his guilty plea. The District Court ultimately granted relief on grounds that the state court's mistake about Johnson's death eligibility for felony murder was structural error, and thus, per se reversible.

The threshold question on this appeal is whether Johnson's claim is procedurally defaulted. Johnson did not raise the death penalty eligibility claim in his direct appeal to the New Jersey Superior Court, Appellate Division, nor did he address it in his first Post Conviction Relief (PCR) petition to the New Jersey courts. He first raised the claim in his petition for certification to the New Jersey Supreme Court; however, this petition was summarily denied. Over a year later, Johnson raised the death penalty eligibility claim in a second PCR petition, but that petition was filed more than five years after his sentence was handed down, and thus was time-barred under New Jersey Rule of Court 3:22-12. Rather than barring Johnson's claim on procedural grounds, however, the District Court invoked the "actual innocence" exception to the procedural default rules, which allows consideration of the merits of a claim, notwithstanding procedural default, to avoid a miscarriage of justice.

We conclude that, in so doing, the District Court misconstrued the scope of the actual innocence exception by applying it where the petitioner wrongly was led to believe he was death eligible, but where the death penalty was not actually imposed. Rather, we hold that the touchstone of the actual innocence inquiry is innocence of the sentence actually *imposed*, not innocence of a sentence for which the petitioner was merely eligible. We also conclude that Johnson's death-eligibility claim was procedurally defaulted because of his failure to bring the claim before the New Jersey state courts in accordance with their procedural rules. Supporting the procedural default conclusion are the facts that: (1) the New Jersey courts

2

considering Johnson's application clearly relied on such procedural default as a separate and independent basis for their denial of relief, and (2) the five-year time bar under N.J.R. 3:22-12 is an adequate state ground, as it is strictly and consistently enforced in all but the most exceptional cases.

Accordingly, we will reverse the order of the District Court and remand with directions to dismiss Johnson's habeas petition as procedurally defaulted.

## I. FACTS AND PROCEDURAL HISTORY

In 1983, Johnson pled guilty to felony murder for the smothering death of a 76-year old man during the course of a robbery. The relevant facts of the crime are not in dispute. Johnson and his co-conspirator Mary Susan Karnish, entered Gerald Clayton's hotel room at the Poughkeepsie Hotel in Asbury Park, New Jersey, with the intent to steal his wallet. As Clayton slept, they searched the room, but initially found nothing and left. Shortly thereafter, Johnson and Karnish returned to Clayton's room to search under the bed. Clayton awoke and screamed. Johnson then grabbed a pillow and placed it over Clayton's face, holding it there until Clayton suffocated to death. Johnson then saw the wallet on the bed, took it, and fled.

The next day, Karnish gave a statement to the police, detailing her involvement in the crime and naming Johnson as an accomplice. Later that day, Johnson gave a confession to the authorities in which he admitted suffocating Clayton. In May 1983, the grand jury charged Johnson with five crimes: murder in the first degree for purposely or knowingly causing the death of or serious bodily injury resulting in death of Gerald Clayton; felony murder; robbery; conspiracy; and burglary. JA 15-18. Pursuant to a plea agreement, the state agreed to dismiss the first degree murder charge in exchange for a guilty plea to felony murder. Johnson entered a guilty plea to the second count of the indictment for felony murder.

This case hinges around a mistake, made during the course of the plea negotiations and at the plea and sentencing hearing, by the New Jersey trial court, Johnson's defense counsel, and the prosecution, all of whom erroneously believed that felony murder could be a capital offense under New Jersey law. New Jersey had only reinstated the death penalty one year before Johnson entered his guilty plea, N.J. Stat. Ann. § 2C:11-3C, effective August 6, 1982, and confusion about the applicability of the death penalty apparently abounded in New Jersey courts. Johnson pled to felony murder, with the understanding that the prosecution would not in fact seek the death penalty, and that to this end, it would stipulate to several mitigating factors and only one aggravating factor at sentencing. At the

3

sentencing hearing, on August 19, 1983, the trial court did consider the death penalty as a possibility for felony murder.  Nevertheless, the court did not sentence Johnson to death, but rather, based on a balance of the mitigating and aggravating factors, sentenced him to life in prison with thirty years parole ineligibility.

Johnson pursued a timely direct appeal which challenged the voluntariness of his plea and the effectiveness of trial counsel, but which did not raise the claim that he was misinformed about his death eligibility.  Instead, he contended that his trial counsel did not inform him of the thirty-year parole ineligibility.  On November 29, 1984, the New Jersey Superior Court Appellate Division affirmed Johnson's conviction and sentence. He did not seek discretionary review by the New Jersey Supreme Court.

In 1987, Johnson filed a *pro se* petition for post conviction relief (PCR), which raised issues of the effectiveness of counsel and the voluntariness of his plea, and asserted that the sentencing proceedings were improperly conducted.  This (first) PCR petition also failed to raise the death-eligibility mistake as a basis for relief. The petition was denied by the trial court and the Appellate Division affirmed.  Johnson then sought certification from the New Jersey Supreme Court, where for the first time, he claimed that it had been error for the trial court to accept his plea because he had been misinformed about his death penalty eligibility for the felony murder count.  The New Jersey Supreme Court denied certification in September 1989.

Johnson then filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the District of New Jersey, which was dismissed without prejudice in February 1991 because it was a "mixed" petition, containing both exhausted and unexhausted claims.  Returning to state court, Johnson filed a second PCR application in August 1991, in which he explicitly raised the death-eligibility issue as well as the unexhausted issue that he was suffering from Post Traumatic Stress Disorder at the time of the crime and his plea.  The trial court denied his petition as untimely under Rule 3:22-12, which requires a PCR petition challenging a sentence to be filed within five years after the sentence is imposed.  In June 1994, the Appellate Division affirmed and the New Jersey Supreme Court denied certification.[1]

Johnson, still proceeding *pro se*, then sought federal review of

---

1  In July 1995, Johnson filed a third PCR application, *pro se*, arguing other defects in the sentencing and plea procedure, which were also denied.

4

his state court conviction pursuant to 28 U.S.C. § 2254, reviving his argument that his plea was not entered knowingly and intelligently because he was operating under the mistaken impression that he could have received the death penalty for felony murder.  The District Court found that Johnson had procedurally defaulted this claim by failing to bring it before the New Jersey courts in a timely fashion.  Nevertheless, the court excused the procedural default on the grounds that Johnson was "actually innocent" of the death penalty and that his conviction would constitute a fundamental miscarriage of justice.  Even though Johnson was not actually sentenced to death, the District Court determined that the actual innocence inquiry focuses on *eligibility* for the death penalty, rather than *imposition* of a death sentence.

Following the determination that Johnson can proceed on the merits of his claim under the actual innocence exception, the court went on to determine that the misinformation provided to Johnson constituted a "structural error" requiring an automatic reversal or vacatur, as such errors are not subject to harmless error analysis.  On this basis, the District Court entered an order granting Johnson's application for a writ of habeas corpus.

The State filed this appeal, arguing that Johnson had procedurally defaulted on the death-eligibility claim and that the District Court erred in invoking the "actual innocence" exception to excuse the procedural default.  The State also contends that the District Court erred in holding that the misinformation about death eligibility constituted a "structural error" requiring automatic reversal.  Instead, the State submits that this type of error should be subjected to harmless error analysis, and that the error was indeed harmless because the evidence shows Johnson would have accepted the plea even if he had been properly informed about his eligibility for the death penalty.

Before the District Court can entertain a federal habeas petition, it is well established that a petitioner must first exhaust his federal claims in state court.  28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  Exhaustion requires that petitioner present in substance the same claim he is now seeking to have the federal courts review.  *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  Even if a state court fails to rule on the merits of a claim, a properly presented claim will be considered exhausted.  *See Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

Notwithstanding the fact that the New Jersey trial court refused to hear Johnson's death-eligibility claim on procedural grounds, the exhaustion requirement was satisfied in this case, as

Johnson clearly presented the claim to the New Jersey courts in his second PCR petition, and the denial of relief was affirmed by the New Jersey Appellate Division and New Jersey Supreme Court.

## II. PROCEDURAL DEFAULT

Where a state court refuses to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine from considering the claims, *Harris v. Reed*, 489 U.S. 255 (1989); *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir. 1992), unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Any procedural default, however, must rest on "adequate and independent" state law grounds. *Harris*, 489 U.S. at 262.

The District Court concluded that the New Jersey courts had refused to consider Johnson's claim because his petition was time-barred under N.J.R. 3:22-12, that Johnson procedurally defaulted his death-eligibility claim and did not demonstrate "cause and prejudice." In a federal habeas proceeding, "review of the district court's legal conclusions is plenary and factual findings in dispute are reviewed under the clearly erroneous standard." *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989).

### A. The "Independence" Requirement

A state procedural ground will not bar federal habeas relief if the state law ground is so "interwoven with federal law" that it can not be said to be independent of the merits of a petitioner's federal claims. *Coleman*, 501 U.S. at 740. Relatedly, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991). The threshold question, therefore, is whether the New Jersey courts, in denying Johnson's death-eligibility claim, relied independently on a violation of state procedure or based their decision on the merits of the claim.

In *Harris v. Reed*, *supra*, the Supreme Court established a "plain statement" rule that there would be no procedural default, for purposes of federal habeas review, unless "the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." 489 U.S. at 263. *Harris*'s plain statement rule was subsequently narrowed by *Coleman v. Thompson*, 501 U.S. 722 , 735 (1991), which established that the first step is to determine whether the decision of the last state court to which the petitioner presented his federal claims "fairly appears to rest primarily on federal law, or to be interwoven with the federal law."

*See also Caswell*, 953 F.2d at 859-60.  Only then, if there is such a reliance on federal law, do we look at whether the state court clearly and expressly based its ruling on a state procedural ground.  *Id.*

The last state court to render judgment in this case, the New Jersey Supreme Court, denied certification on Johnson's petition.  The U.S. Supreme Court addressed such a situation in *Ylst v. Nunnemaker*, *supra*, 501 U.S. 797, holding that when the last state court decision simply affirms summarily the lower court's denial of relief, a federal court should look to the "last *explained* state-court judgment on the . . . claim" to determine whether it "fairly appears to rest primarily on federal law" or instead relies upon a state procedural bar to deny relief.  *Id.* at 802, 805 (emphasis in original).  Therefore, "[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  *Id.* at 803.

The New Jersey courts, while addressing the merits of the case as alternative holdings, clearly rested on state procedural grounds as a separate and independent basis for their decision to deny Johnson's death-eligibility claim.  The Appellate Division, which is the highest state court to write an opinion on the case, itself relied on the trial court's reasoning, affirming "essentially for the reasons expressed in the oral opinion of [the trial court judge]."  The Appellate Division found that the trial judge barred the review of sentence under N.J.R. 3:22-12 because the petition was filed beyond the rule's five-year time limit, but that the trial judge, in the event that the petition was not time barred, also rejected certain claims on the merits.  JA 487.  The Appellate Division's only comment on the merits was, "However, assuming the petition was not time barred, the [trial] court found no evidence defendant had made a motion to dismiss counsel nor that defendant had suffered from mental disease; the claim of ineffective assistance of counsel was found to be without merit."  JA 487.

In Johnson's second PCR petition, the trial court expressly cited N.J.R. 3:22-12, which requires a petition to be filed within five years after the sentence unless the delay was due to excusable neglect, and found that there were not "any facts alleged that would constitute excusable neglect."  JA 654.  Similarly, the trial court found that "the challenge" could have been made on the defendant's many appeals and prior applications for post-conviction relief.  JA 654.  Although "the challenge" does not refer to any one specific claim, it appears that

7

the trial court was referring to all the claims in the petition.[2]

The fact that both the New Jersey trial court and Appellate Division made reference to the merits of the case as an alternative holding does not prevent us from finding procedural default. In *Harris v. Reed*, the U.S. Supreme Court noted that

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

489 U.S. at 264 n.10 (citations omitted, emphasis in original); *see also Cabrera v. Barbo*, 175 F.3d 307, 314 (3d Cir. 1999) (holding that the fact that Appellate Division also addressed the lack of merit in the ineffective assistance of counsel claim "does not undermine our conclusion that the state courts rejected Cabrera's claim on an independent and adequate state basis, as the comment at most was an alternative holding").

In this case, both the Appellate Division and the trial court explicitly invoked the procedural bar under N.J.R. 3:22-12, which was an independent basis for the Appellate Division to deny Johnson relief.

## B. Adequacy of the Procedural Bar

---

2 The trial court went on to briefly address some of the claims on their merits. On the claim that it was error to allow Johnson to plead without investigating his motion to dismiss, the trial court considered that "if for some reason the matter is not time barred and someone finds excusable neglect" then the defendant would fail because of a lack of evidence. For the mental illness claim, the trial court also found a lack of evidence that he suffered from mental illness. Finally, the court rejected the ineffective assistance claim by applying the *Strickland* test. JA 655. The trial court did not address the death-eligibility claim on the merits.

Johnson also challenges the adequacy of the procedural bar under N.J.R. 3:22-12.

> A state rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions.

*Doctor v. Walters*, 96 F.3d 675, 683-84 (3d Cir. 1996). Thus, a state rule can be rendered inadequate if the rule is not "strictly or regularly followed." *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."). Nevertheless, neither "an occasional act of grace by a state court in excusing or disregarding a state procedural rule" nor a "willingness in a few cases to overlook the rule and address a claim on the merits" renders a state procedural rule inadequate. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997).

The procedural rule, in this case N.J.R. 3:22-12, speaks in unmistakable terms requiring any challenge to a sentence to be filed within five years of the sentencing proceeding. Moreover, as we discussed above, *see* Part II.A, *supra*, the state appellate courts found that this rule procedurally barred Johnson's death-eligibility claim, and thus discussed the merits of the case only as an alternative holding. Instead, Johnson challenges the adequacy of the state court rulings by arguing that the state courts' refusal to hear his claim is not consistent with other New Jersey decisions and that N.J.R. 3:22-12 is not "strictly or regularly followed."

As it will appear, New Jersey state law ultimately resolves the adequacy issue against Johnson, and it arguably might be enough simply to rely on the state court's holding. However, in view of the vigor with which Johnson advanced the argument that the New Jersey procedural bar constitutes inadequate state law grounds, it seems prudent to address this claim, hence we do so.

1. The Putative Exception to the Time Limit as a Procedural Bar

Johnson claims that he did not actually violate a state procedural rule because his case falls into a "well-recognized exception" to the five-year time limit. Citing a New Jersey Supreme Court decision, *State v. Milne*, 842 A.2d 140, 144 (N.J. 2004), Johnson contends that when a new case is announced, which provides

relief not previously available to the defendant, the New Jersey courts permit the five-year time limitation to run from the date of that "new" decision. Johnson points to *State v. Kiett*, 582 A.2d 630 (N.J. 1990), which he says opened such a new avenue of relief by holding that "a defendant who entered a guilty plea to avoid imposition of the death penalty, but who cannot be put to death as a matter of law, labors under the kind of mistake that entitles him or her to withdraw the plea." *Id*. at 633.

Johnson's arguments are unavailing on several counts. First, New Jersey precedent does not support his claim that there is an automatic "new law" exception to the five-year time limit. While *State v. Milne* reasoned that new law can, in certain "compelling" circumstances, reset the five-year clock, 842 A.2d at 144, *Milne* considered the "extent and cause of the delay, the prejudice to the State, and the importance of petitioner's claim in determining whether there has been an injustice sufficient to relax the time limits" before allowing any exception to the time bar. *Id*. at 143-44 (internal quotation marks omitted). Thus, the "new law" exception is by no means automatic, but rather requires a balancing of interests. In *Milne*, the defendant tried to raise his claim more than five years after the "new law" had been handed down. Although that was the primary rationale for the New Jersey Supreme court's rejection of petitioner's claim in that case, the court also expressed strong reservations about the prospect of reviewing a sixteen-year old conviction as it would entail substantial prejudice to the State and cause "difficulties and hardships to the system." *Id*. at 144. In Johnson's case the guilty plea and conviction are twenty-one years old, and certainly the State's ability to put on a trial at this late date would be seriously handicapped.

Second, it is not clear that *Kiett* should be considered new grounds for relief, as there were several earlier cases which are congruent with *Kiett*'s holding. *See State v. Nichols*, 365 A.2d 467 (N.J. 1976) (permitting defendant to withdraw guilty plea where he was misinformed about whether he could receive consecutive sentences for his involvement in an armed robbery if he went to trial); *State v. Kovack*, 453 A.2d 521, 524 (N.J. 1982) (finding that a plea was not entered knowingly where the defendant was not informed of his parole ineligibility). While no prior New Jersey case specifically dealt with a mistake about death eligibility, these earlier cases afforded relief to petitioners who labored under mistakes about their eligibility for less grave sentences, so it would seem logical that such relief would *a fortiori* have been available to petitioners who were

10

mistaken about eligibility for the death penalty.[3]

At all events, the argument that *Kiett* opened a new avenue of relief is contradicted by the history of this case, for it is clear that Johnson was put on notice of the viability of his death-eligibility claim well before *Kiett*. The Appellate Division decision on direct appeal, in Johnson's own case, handed down in 1984, should have put Johnson on notice that the death-eligibility claim could have provided additional grounds for appeal. The Appellate Division specifically commented that it had not been called upon to determine whether misinformation about death eligibility prejudicially impacted the defendant's decision to plead guilty, implying that this omission was a mistake by Johnson's counsel.

Although he did not raise it in his first PCR petition to the trial court, Johnson included the death-eligibility claim in his petition for certification to the New Jersey Supreme Court, filed in 1989–one year before *Kiett*. In that petition, Johnson cited *Nichols, supra*, 365 A.2d 467, to support the proposition that the misinformation about his death eligibility rendered his plea involuntary and "conceded that this issue could have (and should have) been raised on direct appeal." Johnson did not file his second PCR petition, raising the instant claim, until over a year after offering this admission in his petition to the New Jersey Supreme Court.

The fact that he was on notice that he could raise this claim as an avenue of relief, and failed to do so, seems to exclude Johnson's petition from the set of "compelling" cases that *Milne* contemplates for leniency.

2. Adequacy of the State Procedural Rule

In the same vein, Johnson claims that the state grounds were inadequate because New Jersey courts do not strictly or regularly enforce N.J.R. 3:22-12's five-year time bar. He points to liberal language in the New Jersey Supreme Court opinions in *Milne, supra*, and *State v. Preciose*, 609 A.2d 1280 (1992).[4] *Milne* noted that the

---

3 It should be noted that even if *Kiett* could be considered "new" grounds for relief, it is not clear that the New Jersey courts would give it retroactive effect. *See State v. Afanador*, 697 A.2d 529, 536-38 (N.J. 1997) (explaining the retroactivity analysis for "new law" in New Jersey as a series of three factors but generally resting on the court's discretion).

4 Johnson's counsel also claimed, at oral argument, that there are thousands of unpublished New Jersey state court decisions, many of which take a permissive approach to the five-year time bar. We find that undocumented assertion unhelpful, and confine our analysis to

"five-year time limit is not absolute" and that a "court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the 'interests of justice' demand it." 842 A.2d at 143. Nevertheless, *Milne* cautioned that "[a]bsent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." *Id.* at 144.

In *Preciose*, the New Jersey Supreme Court engaged in an exegesis of the federal law of procedural default in its attempt to decide whether state lower courts should make express rulings on state procedural grounds in order to foreclose potential avenues of federal habeas relief. 609 A.2d at 1292. Announcing a relatively pliable view of state procedural rules, in *Preciose*, the court declined to read at least one procedural rule narrowly, and concluded that New Jersey's system of post-conviction relief is broader than federal habeas review. *Id*. at 1294. In so doing, the court noted that "when meritorious issues are raised that require analysis and explanation, our traditions of comprehensive justice will best be served by decisions that reflect thoughtful and thorough consideration and disposition of substantive contentions." *Id.*

Notwithstanding these pronouncements of relative flexibility, a review of New Jersey case law, set forth *infra*, reveals that the New Jersey courts have generally applied the time bar set forth in N.J.R. 3:22-12 so that this rule can fairly be said to have been firmly established and regularly followed. *See Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) ("[I]f a state supreme court faithfully has applied a procedural rule in 'the vast majority' of cases, its willingness in a few cases to overlook the rule and address a claim on the merits does not mean that it does not apply the procedural rule regularly or consistently."). Therefore, the mere fact that *Preciose* and *Milne* expressed the potential for greater leniency than federal habeas law does not mean that the five-year time limit is not adequate grounds for procedural default. Indeed, *Milne* itself refused to relax the time bar where the defendant failed to file his petition within five years of a case announcing a new rule of law and had no excuse for his neglect. 842 A.2d at 144-46. The *Milne* court further admonished the defendant for waiting more than a year after the District Court's decision on his federal habeas claim to file his second PCR petition and noted that if he had acted more promptly, he could have remained within the five-year window of the "new law." *Id.*

Somewhat analogously, in this case, Johnson's petition for

documented material.

12

certification for his first PCR petition raised the death-eligibility claim. Although this certification was denied, Johnson waited more than a year to file his second PCR petition and to again raise the death-eligibility claim. While Johnson would not have been within the five-year time bar even if he had filed his second PCR petition more expeditiously, such delay does not exhibit exceptional diligence. Therefore, *Milne*'s application of the procedural bar, rather than its rhetoric, seems the appropriate rule in this case.

The State has provided a list of the many cases in which the New Jersey courts have enforced the time bar. We too have conducted a review of New Jersey Supreme Court precedents and have found few cases that have actually relaxed N.J.R. 3:22-12's five-year time bar. To this end, the New Jersey Supreme Court has repeatedly emphasized that the time bar should be relaxed only in "exceptional," "compelling," or "extenuating" circumstances. *See, e.g.*, *State v. Goodwin*, 803 A.2d 102, 108 (N.J. 2002) ("The time bar [under 3:22-12] should be relaxed only under exceptional circumstances . . . We consistently have recognized the importance of adhering to this procedural bar."); *State v. Marshall*, 801 A.2d 1142, 1150 (N.J. 2002) (finding no basis for excusable neglect and barring the PCR petition under Rule 3:22-12); *State v. Murray*, 744 A.2d 131 (N.J. 2000) (recognizing two exceptions to the five-year limit, an illegal sentence and excusable neglect, finding defendant satisfied neither); *State v. Afanador*, 697 A.2d 529, 534 (N.J. 1997) ("[A] court should only relax the bar of Rule 3:22-12 under exceptional circumstances. . . . Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay."). From the unambiguous language of Rule 3:22-12 and from the many prior cases that have consistently applied the time bar, it is clear that this procedural rule was an independent and adequate state ground establishing procedural default.

Instead of looking to the overwhelming majority of cases where the time bar has been consistently applied, Johnson points to the few exceptional cases where the New Jersey Supreme Court was willing to overlook the five-year time bar because of compelling circumstances. *See, e.g.*, *Afanador*, 697 A.2d at 534 (finding that the petitioner had alleged exceptional circumstances where the defendant was "caught in a Catch-22 situation" because for four years and seven months he could not file a PCR petition while his direct review was pending, and where defendant "did everything within his power to preserve the issue" including attempting to raise it in a timely *pro se* petition).

In particular, Johnson and the District Court cite *State v.*

*McQuaid*, 688 A.2d 584 (N.J. 1997), a case decided nearly six years after Johnson filed his second PCR petition, as precedent for collateral review of an error regarding death eligibility notwithstanding several procedural defaults. McQuaid had been an accomplice in a robbery-turned-murder. McQuaid too labored under the misapprehension that he faced the death penalty, in that case, on count one of his indictment---"murder by his own conduct"---and so pled guilty to felony murder to avoid what he wrongly believed was a capital charge. In fact, the court subsequently decided that "murder by his own conduct" is not a capital offense unless the defendant was the trigger-person, which McQuaid was not. Similar to this case, McQuaid did not raise the claim of misinformation about death eligibility until his second PCR petition, which was filed more than five-years after his sentence.

The New Jersey Supreme Court considered a range of reasons McQuaid might face procedural bars to his PCR petition, including Rule 3:22-12; however, because the misinformation was immaterial to his plea decision, the court did not decide the procedural bar issue but rather denied the petition on the merits. *Id.* at 600. Like *Milne* and *Preciose*, *McQuaid* contains expansive language about the harshness of strictly barring claims on procedural grounds. 688 A.2d at 600 (observing that "defendants should not pay the exacting price for state procedural forfeitures that result from the ignorance or inadvertence of their counsel"). Still, *McQuaid* does not stand for the proposition that the New Jersey courts will simply forgive a procedural default; rather, it demonstrates that in accord with *Preciose*, they are willing to weigh procedural and substantive grounds, at times, in the alternative. Indeed, in considering the merits the court particularly stressed the significant prejudice to the State if it was to allow the defendant to withdraw his guilty plea, a factor which would also cut against a relaxation of the procedural bar under *Milne*'s balancing test. *Id*. at 601-02.[5]

---

5 Indeed, it is worth noting that the factors that would allow a defendant to withdrawal his plea on the merits are similar to those that might excuse a procedural bar. A separate New Jersey procedural rule requires a motion to withdraw a plea to be made before sentencing, N.J.R. 3:21-1; however, after sentencing a court can permit withdrawal to "correct a manifest injustice." New Jersey courts, therefore, have established a balancing test to determine whether a plea may be withdrawn which is nearly identical to the test for relaxation of a procedural bar set forth in *Milne*, 842 A.2d at 143-44 (considering the "extent and cause of the delay, the prejudice to the State, and the

Notwithstanding *McQuaid*'s decision to deny the petition on the merits in an analogous case, the New Jersey courts have reviewed Johnson's claim and have not found that his case fits into the exceptional category of cases, but rather, have applied their normal rule limiting the time to challenge a sentence to five-years. In light of the foregoing discussion, this decision reflects an adequate state law ground.

## C. Cause and Prejudice

A procedural default generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice. *Wainwright v. Sykes, supra,* 433 U.S. 72; *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Cause, therefore, can be established by showing, for example, that the factual or legal basis for a claim was not reasonably available to counsel or that government interference made compliance with the procedural rule impracticable. *Id.*; *Hull v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993). Attorney error may constitute cause only where such error rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment. *Murray*, 477 U.S. at 488-89. Nevertheless, "ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel," and thus, the petitioner bears the risk of attorney error in such proceedings. *Hull*, 991 F.2d at 91; *See also Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991).

The District Court rightly determined that Johnson did not

importance of the petitioner's claim in determining whether there has been an injustice sufficient to relax the time limits" before allowing any exception to the time bar). The test for withdrawal weighs the State's interest in the finality of judgments against the defendant's interest in entering a knowing and voluntary plea. *See McQuaid*, 688 A.2d at 596. The defendant's interest in withdrawal will depend on whether the misinformation was material to his plea and whether he was prejudiced as a result. *Id.* at 598. On the other side of the balance, the state's interest in finality will be greater when the state would be prejudiced in its ability to re-try the defendant. *Id.* at 601. Thus, the finding in *McQuaid* that the defendant's claim was undeserving on the merits would also inform a future court's decision on whether it would be appropriate to waive the procedural bar.

15

establish cause for the procedural default of this claim. Johnson does not now even argue that he had cause or suffered prejudice. Moreover, none of the typical reasons for "cause" apply in this case. There was no novel constitutional rule, nor was there a new factual predicate. There was no hindrance by the state court in complying with the procedural rule. Johnson cannot claim ineffective assistance of counsel for his failure to raise the death-eligibility claim in his post-conviction proceedings because he had no right to counsel to pursue his appeal in state post-conviction relief; thus, attorney error at that stage cannot constitute cause. *Coleman*, 501 U.S. at 752-54. In short, Johnson's failure to raise the death-eligibility claim in his first PCR petition can not be excused by attorney error. Finally, Johnson has "fail[ed] to allege the existence of an external impediment" and therefore, cannot establish cause for his procedural default. *Moscato*, 98 F.3d at 762.

### III. ACTUAL INNOCENCE/MISCARRIAGE OF JUSTICE

In addition to the cause and prejudice standard, a limited exception to procedural default has been recognized where "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The miscarriage of justice exception, however, applies only to the case where the miscarriage is tied to the petitioner's actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). In those "rare" or "extraordinary" cases, the "truly deserving" may receive relief by allowing "the principles of comity and finality, which animate the procedural default rule" to "yield to the imperative of correcting a fundamentally unjust incarceration." *Schlup v. Delo*, 513 U.S. at 319-21.

The "prototypical example" of the application of the "actual innocence" exception is where a petitioner is innocent of all criminal wrongdoing, such as where he claims that the government has convicted the wrong person for the crime. *See Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). Nevertheless, the Court has recognized that the exception can be extended to cases where the defendant claims to be "innocent of the death penalty." *Id.* at 340-41. To qualify for this exception, a petitioner "must show by clear and convincing evidence that no reasonable juror would have found him eligible for the death penalty in light of the new evidence. *Calderon v. Thompson*, 523 U.S. 538, 560 (1998) (internal quotations omitted).

The District Court relied on this exception to excuse Johnson's procedural default and to permit a consideration of Johnson's claim on the merits. The court concluded that Johnson was actually innocent of the death penalty and that the miscarriage of justice was

that he was "wrongfully *exposed* to a pro forma capital sentencing hearing," even though he was actually sentenced to life imprisonment. (emphasis added).

There is no dispute that Johnson, at a minimum, is guilty of felony murder. He does not deny suffocating the victim in the course of a robbery. Rather, the District Court's holding rests on the assumption that he was "innocent" of a capital crime. This first proposition is disputed and arguably incorrect. While Johnson pled guilty to felony murder, a crime which was wrongly believed at the time of sentencing to potentially carry a death sentence, he was also charged with, and potentially was guilty of, capital murder. *See State v. Bey*, 610 A.2d 814, 825 (N.J. 1992) ("Strangulation is commonly understood as a form of violence designed and likely to kill a victim, and hence would ordinarily not be used by one whose purpose was only to inflict serious bodily injury.").

As a result, even if exposure to the death penalty could trigger the actual innocence exception, Johnson still would not likely be entitled to relief because "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Under this case law, Johnson would need to demonstrate not only that he was ineligible for the death penalty for felony murder, but also that he was innocent of the capital murder charge, which the prosecution dismissed in exchange for his guilty plea to felony murder. Under the facts of Johnson's confession, it is far from clear that he could establish actual innocence of the capital murder charge.

But even if Johnson could not have received the death sentence for any charge, the key factor is that Johnson was not sentenced to death and is indubitably guilty of the sentence he *actually received* for felony murder---life imprisonment. Even though the state trial court wrongly considered the death penalty at sentencing, it did not impose the death penalty. While Johnson may have been prejudiced in his decision to accept the plea because he believed he faced a looming, but ultimately improper, death penalty, this fact does not make him actually innocent of felony murder.

We hold that the District Court erred in concluding that the focus of the "actual innocence" standard is *eligibility* for the death penalty and in holding that "the ultimate sentence is not dispositive of whether the [actual innocence exception] applies. Instead, the critical issue is whether there was wrongful exposure to the death penalty." Rather, the touchstone of the actual innocence inquiry is the sentence actually *imposed*.

17

The District Court's focus on death eligibility is without precedential support. No case has been cited to us in which the courts have used the actual innocence exception to overturn a conviction or to allow a withdrawal of a plea based on innocence of sentence to which the petitioner was merely exposed, rather than innocence of a sentence actually imposed. To the contrary, each case that has applied this exception has focused on the sentence which was received. *See, e.g.*, *Sawyer*, 505 U.S. 333 ("The issue . . . is the standard for determining whether a petitioner . . . has shown he is 'actually innocent' of the death penalty *to which he has been sentenced*." (emphasis added)); *Cristin v. Brennan*, 281 F.3d 404, 420-22 (3d Cir. 2002) (framing the inquiry as whether defendant was "actually innocent of *his sentence*" and questioning whether the exception even applies in cases where a defendant was not sentenced to death (emphasis added)); *Spence v. Superintendent*, 219 F.3d 162, 172 (2d Cir. 2000) (applying the actual innocence exception where the petitioner "is actually innocent of the conduct *on which his sentence is based*"(emphasis added)); *Smith v. Collins*, 977 F.2d 951, 959 (5th Cir. 1992) ("[F]or a defendant to demonstrate actual innocence of the sentence imposed he would have to show that but for the constitutional error he would not have been legally eligible for the *sentence he received*." (emphasis added)); *Mills v. Jordan*, 979 F.2d 1273, 1279 (7th Cir. 1992) ("The question in *Sawyer* was not whether the petitioner was innocent of the murder for which he was convicted, but rather whether he was innocent of the aggravating factors *upon which his death sentence was based*."(emphasis added)).

The Supreme Court, in establishing the actual innocence exception, spoke of being actually innocent *of the death penalty*, *see Smith v. Murray,* 477 U.S. 527, 537 (1986), rather than some general unfairness in the sentencing process. Thus, it is not enough for the petitioner to argue that his sentence might have been different but for the constitutional error; rather he must establish that he was in fact ineligible for the sentence imposed. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The Supreme Court has also rejected the application of the actual innocence exception to cases alleging improper discretion or unfairness in sentencing, choosing instead to focus on factual innocence of the elements that permitted the imposition of the death penalty under state law. *See Dugger v. Adams*, 489 U.S. 401, 410 (1989).

In each of these cases, the Supreme Court's reasoning rests on the assumption that the petitioner faced the death penalty, and that it was the potential for an improper imposition of that grave sentence, rather than some general irregularity in the sentencing process that

could justify excusing the procedural bar to avoid a true miscarriage of justice. It is in this context that the Court has repeatedly emphasized that the actual innocence inquiry means "actual innocence, not mere legal insufficiency." *See Bousley*, 523 U.S. at 623-24; *Sawyer v. Whitley*, 505 U.S. at 339.

Given the narrow scope of the exception, we decline to follow the District Court's reasoning and consider whether the defendant was innocent of a sentence which was not actually imposed. If mere exposure were sufficient to trigger the miscarriage of justice exception, every defendant would have a habeas claim if the judge or prosecution considers a sentence of which the defendant might be "innocent," and every defendant who pled guilty to ensure life imprisonment but was threatened with the death penalty at sentencing, might claim that he was wrongly exposed to the death penalty because for some reason he was death ineligible. The result of applying the District Court's exposure rationale would surely run afoul of the Supreme Court's admonition that this exception is to be applied only in the "extraordinary case" and that it is "narrow" in scope. *Schlup v. Delo*, 513 U.S. at 321; *see also Dugger*, 489 U.S. at 410 n.6 ("Demonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received. Th[is] approach . . . would turn the case in which an error results in a fundamental miscarriage of justice, the 'extraordinary case,' into an all too ordinary one.").

Additionally, in cases where the death sentence was not actually imposed, the individual interest of avoiding injustice, cited in *Schlup*, 513 U.S. at 324-25, as an important factor in allowing this limited exception to the procedural default rules, is considerably less compelling than in cases where an individual faces imminent execution. Given our past precedents and the extraordinary nature of the actual innocence exception, we hold that the District Court erred in applying the actual innocence exception based on improper death eligibility rather than focusing on the sentence actually imposed.[6]

6 Because we rest on procedural default grounds, we do not decide the question of structural error. In determining whether an error is structural in nature:

> The Supreme Court has distinguished between two types of constitutional error that occur at both trial and sentencing: 'trial errors,' which are subject to constitutional harmless error analysis, and 'structural

19

## IV. CONCLUSION

For the foregoing reasons, we will reverse the District Court order of January 21, 2004 and remand with directions to dismiss Johnson's habeas petition.

---

> defects,' which require automatic reversal or vacatur. *See Arizona v. Fulminante*, 499 U.S. 279, 309 (1991); *United States v. Pavelko*, 992 F.2d 32, 35 (3d Cir.1993). Structural defects 'defy analysis by harmless error standards,' *Fulminante*, 499 U.S. at 309, because they 'infect the entire trial process,' *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993).

*U.S. v. Stevens*, 223 F.3d 239, 244 (3d Cir. 2000).

We note that there is significant prior precedent for requiring harmless error analysis in the plea bargaining context. *See, e.g.*, *United States v. Dixon*, 308 F.3d 229 (3d Cir. 2002) (applying harmless error analysis where petitioner was misinformed about his maximum possible sentence); *United States v. Ebel*, 299 F.3d 187, 191 (3d Cir. 2002) ("inherently coercive" involvement of a judge in a plea negotiation did not require automatic reversal); *United States v. Westcott,* 159 F.3d 107, 112-14 (2d Cir. 1998) (requiring demonstration that misinformation about his maximum possible sentence was material to petitioner's guilty plea). Moreover, the recent Supreme Court decision in *United States v. Dominguez-Benitez*, No. 03-167 2004 WL 1300161 (U.S. June 14, 2004), casts serious doubt on the District Court's holding that misinformation about maximum sentences in the plea bargaining process constitutes a structural error. In *Dominguez-Benitez*, the Court held that it was not structural error for the District Court to fail to warn the defendant that he would not be allowed to withdraw his plea if the court rejected the government's sentencing recommendation as required by Fed. R. Crim. P. 11. *Id*. at *5.

20