John W. DREHER, Appellant

v.

The ATTORNEY GENERAL OF the State of NEW JERSEY, Steven Pinchak.

No. 06–2706.

United States Court of Appeals, Third Circuit.

Argued March 6, 2008.

Filed: April 14, 2008.

David A. Ruhnke [Argued], Ruhnke & Barrett, Montclair, NJ, for Appellant.

Michael M. Rubbinaccio, Clementine T. Manochio [Argued], John K. McNamara, Jr. [Argued], Office of County Prosecutor, Hall of Records, Morristown, NJ, for Appellees.

Before: BARRY, JORDAN, and HARDIMAN, Circuit Judges.

OPINION OF THE COURT

JORDAN, Circuit Judge.

John Dreher appeals from the May 10, 2006 order of the United States District Court for the District of New Jersey dismissing his petition for a writ of habeas corpus. For the reasons that follow, we conclude that one of Dreher's claims of constitutional error was subject to dismissal as being procedurally defaulted and that the remaining claims were properly denied on the merits. We will therefore affirm the order of the District Court.

## I. Background

Because we write solely for the parties, we set forth only those facts necessary to our discussion.[1] The issues on appeal

---

1. A more detailed factual background of this case is set forth in two previous decisions of the Superior Court of New Jersey, Appellate Division, see State v. Dreher, 251 N.J.Super.

stem from the District Court's ruling that Dreher's petition was timely and not procedurally defaulted. Before turning to the issues, it is necessary to examine the procedural history of the case, especially the previous decisions of the New Jersey and federal courts.

## A. Summary of Procedural History

On August 17, 1989, Dreher was convicted of murdering his wife, Gail Dreher. The Superior Court of New Jersey, Appellate Division (the "Appellate Division") reversed that conviction and the case was remanded on October 4, 1991 for a new trial. *State v. Dreher*, 251 N.J.Super. 300, 598 A.2d 216 (1991). On May 10, 1995, Dreher was again convicted of the murder. The second conviction was affirmed by the Appellate Division on June 20, 1997. *State v. Dreher*, 302 N.J.Super. 408, 695 A.2d 672 (1997). The Supreme Court of New Jersey denied certification on October 21, 1997, *State v. Dreher*, 152 N.J. 10, 702 A.2d 349 (N.J.1997), and the United States Supreme Court denied certiorari on June 22, 1998, *Dreher v. New Jersey*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 723 (1998).

On October 21, 1998, Dreher filed his petition for a writ of habeas corpus in the District Court, which dismissed the petition on July 17, 2001. *Dreher v. Pinchak*, No. 98–4816 (D.N.J. July 17, 2001) (App. at 20–84). On March 3, 2003, a panel of this Court vacated the District Court's decision and remanded with instructions to dismiss

the petition without prejudice because Dreher's petition contained an unexhausted claim.[2] *Dreher v. Pinchak*, 61 Fed. Appx. 800 (3d Cir.2003). Then, on August 6, 2003, Dreher filed a petition for post-conviction relief in the Superior Court of New Jersey, Law Division (the "Law Division"), seeking to exhaust that claim. On October 6, 2003, the United States Supreme Court denied certiorari as to this Court's decision vacating the District Court's habeas opinion. *Dreher v. Pinchak*, 540 U.S. 888, 124 S.Ct. 270, 157 L.Ed.2d 160 (2003).

On November 13, 2003, the District Court granted Dreher's motion to stay the habeas proceedings and hold his petition in abeyance while he pursued state remedies. Several months later, on April 23, 2004, Judge Ahto of the Law Division delivered an oral opinion denying post-conviction relief.[3] The Appellate Division affirmed on August 22, 2005, *State v. Dreher*, No. A–5273–03T3 (N.J.Super.Ct.App.Div. Aug. 22, 2005) ("Slip Op."), and the Supreme Court of New Jersey denied certification on November 17, 2005, *State v. Dreher*, 185 N.J. 392, 886 A.2d 662 (2005).

On May 10, 2006, the District Court granted Dreher's motion to vacate the stay and reinstate his petition, but it dismissed his petition on the merits. *Dreher v. Ortiz*, No. 98–4816, 2006 WL 1281251 (D.N.J. May 10, 2006) ("*Ortiz*"). Dreher then appealed to this Court again.[4]

---

300, 598 A.2d 216, 217–18 (1991) (reversing conviction and remanding for a new trial), *State v. Dreher*, 302 N.J.Super. 408, 695 A.2d 672, 677–93 (1997) (affirming second conviction), and a previous decision of the District Court, *see Dreher v. Pinchak*, No. 98–4816 (D.N.J. July 17, 2001) (denying and dismissing petition for writ of habeas corpus) (Appendix ["App."] at 20–84).

**2.** As is explained in more detail below, this claim is referred to as the "junk science" claim.

**3.** The transcript from that proceeding is cited herein as "4/23/04 Tr."

**4.** The District Court had jurisdiction under 28 U.S.C. § 2254. *Ortiz*, 2006 WL 1281251 at *3. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We apply a plenary standard of review when, as in this case,

**B. Summary of Previous Decisions of the New Jersey and Federal Courts**

*1. The 1997 Decision of the Appellate Division Affirming Dreher's Second Conviction*

The Appellate Division's 1997 affirmance of Dreher's second conviction is the basis of the habeas petition before us now. In his losing effort before the Appellate Division, Dreher raised several arguments, the most pertinent one being his "junk science" claim, i.e., the claim that the "trial court erroneously permitted the State to elicit a purported expert opinion concerning time of death that was based on an arbitrary and unscientific methodology." *Dreher*, 695 A.2d at 677. More specifically, Dreher argued that "the judge erred by allowing the medical examiner [Dr. Ernest Tucker] to testify regarding the estimated time of death based on the decedent's vitreous potassium level because the witness's methodology was not generally accepted in the scientific community." *Id.* at 698.

The Appellate Division disagreed with Dreher's argument, *id.*, and instead agreed with the trial court's ruling "that whether Tucker had properly conducted the vitreous potassium test, in conjunction with other tests, to determine the time of death was a fact question for the jury because there was room for legitimate disagreement." *Id.* at 699. In reaching that conclusion, the Appellate Division relied exclusively on New Jersey state evidentiary law. *See, e.g., id.* ("The instant situation is more similar to [*State v. Zola*, 112 N.J. 384, 548 A.2d 1022 (1988)] than it is to

[*Bahrle v. Exxon Corp.*, 279 N.J.Super. 5, 652 A.2d 178 (1995)].")

The Appellate Division went on to say that, even if the admission of the evidence was error, it was harmless "because Tucker arrived at his estimated time of death by looking at four separate factors, only one of which was the vitreous potassium level.... Moreover, Tucker made it clear that the time of death was only an estimate and that it was stated within a given range of several hours." *Id.* at 700.

*2. The District Court's 2001 Decision Dismissing Dreher's Habeas Petition*

Dreher filed his habeas petition in the District Court on October 21, 1998. The Court first determined that Dreher had "properly exhausted his state remedies[,]" saying, "[a]ll of the grounds asserted by petitioner in support of his application for habeas corpus were previously presented in his appeal to the New Jersey state courts...." (App. at 30.) The habeas petition raised twelve grounds for relief, "alleg[ing] errors of constitutional dimension made by the trial court during his second criminal trial." (App. at 25.) Again, the one most pertinent to this appeal is his claim that the trial court erred in admitting the testimony of Dr. Tucker.

Dreher argued that the "trial court erred in allowing ... Dr. Ernest Tucker [ ] to give testimony concerning the time of Gail Dreher's death because Tucker employed a methodology for which there was no scientific basis." (App. at 41 (internal quotation marks omitted).) In particular, Dreher complained that Dr. Tucker put a novel and unscientific twist on the vitreous

---

the District Court dismisses a habeas petition based on a review of the state court record and without holding an evidentiary hearing. *Fahy v. Horn*, 516 F.3d 169, 179 (3d Cir.2008) (citing *Duncan v. Morton*, 256 F.3d 189, 196

(3d Cir.2001)) (other citation omitted). Our review is also plenary as to the District Court's determinations regarding exhaustion and procedural default. *Id.* (citing *Albrecht v. Horn*, 485 F.3d 103, 114 (3d Cir.2007)).

potassium test, "an established forensic technique which correlates the amount of time elapsed after death with the level of potassium concentration found in the vitreous humor of the human eye." (App. at 41.) According to Dreher, "Dr. Tucker's testimony regarding the vitreous potassium test should have been excluded as unreliable junk science conveniently tailored to fit the prosecution's theory-of-the-case." (App. at 42 (internal quotation marks omitted).)

After acknowledging the Appellate Division's conclusion that whether Dr. Tucker properly performed and analyzed the vitreous potassium test was a fact question for the jury, the District Court stated that, "[e]ven under the liberal standards of the Federal Rules of Evidence, Dr. Tucker's testimony should not have made it past the 'gatekeeping role' of the trial judge.... Were it a question of first impression for this Court to decide, the admission of this testimony might well be considered a violation of petitioner's right to due process." (App. at 44.) The District Court decided, however, that, consistent with the scope of its habeas review, it was "constrained to conclude" that the admission of Dr. Tucker's testimony, standing alone, did not violate Dreher's right to due process. (App. at 46.) The Court also "conclude[d] that considered in their totality, petitioner's claims do not call for issuance of the writ of habeas corpus." (App. at 83.) It thus dismissed Dreher's petition and issued a certificate of appealability.

### 3. *This Court's 2003 Decision Vacating and Remanding to the District Court With Instructions to Dismiss Dreher's Petition Without Prejudice*

Dreher appealed to this Court. The panel that took up the case requested supplemental briefing "on the question of whether the State had expressly waived the exhaustion requirement in this case." *Dreher,* 61 Fed.Appx. at 802. That question arose because, "[a]lthough the State admitted that it conceded exhaustion in its answer to the petition for writ of habeas corpus, on appeal the State argued that it ha[d] not expressly waived exhaustion within the meaning of 28 U.S.C. § 2254(b)(3)." *Id.* at 802–03.

Following briefing and argument, the majority of a divided panel agreed with the State [5], invoking a "stringent standard for proving waiver of exhaustion," *id.* at 803, and determining that Dreher had not exhausted the junk science claim, *id.* at 805–06. The majority observed that "[t]he District Court was clearly concerned about the admission of Dr. Tucker's testimony," but went on to rule that "[a]ccepting that the District Court's concerns were valid, it was nonetheless error for the Court to consider the merits of this [junk science] claim, because the record demonstrates that the alleged due process violation resulting from the admission of Dr. Tucker's testimony was not 'fairly presented' to the New Jersey state courts." *Id.* at 804–05.

Because the majority determined that Dreher's petition "contain[ed] at least one

---

5. The decision was made over the vigorous dissent of a District Court judge sitting by designation, who said that when the State answered Dreher's petition, it "admitt[ed] that [Dreher] ... ha[d] exhausted his available state remedies.... ... In my view, counsel's affirmative admission of exhaustion was an express waiver. The majority opinion holds that for waiver to be effective something more than a concession in an answer is required. The opinion does not suggest language which would constitute an express waiver; indeed, it is difficult to conceive of any language which would be more express than that which appears in the answer." *Dreher,* 61 Fed.Appx. at 806 (O'Neill, J., dissenting).

unexhausted claim," making it a "mixed petition," it held that the petition should have been dismissed without prejudice. *Id.* at 806. The case was remanded to the District Court with instructions "to vacate its order and dismiss the petition for habeas corpus without prejudice." *Id.* However, on November 13, 2003, the District Court granted Dreher's motion to stay the habeas proceeding and hold his petition in abeyance while he sought to exhaust his state remedies.

### 4. The 2004 Decision of the Law Division Denying Dreher's Application for Post–Conviction Relief as Procedurally Barred

Dreher took his junk science claim to the New Jersey state courts, but without success. In an oral opinion, Judge Ahto of the Law Division determined that Dreher's application for post-conviction relief ("PCR") was procedurally barred pursuant to New Jersey Court Rules 3:22–4[6] and 3:22–12[7]. Judge Ahto's most important findings were, first, that "[i]n the state court the defense counsel framed his challenge as to the admissibility of Dr. Tucker's time of death estimate solely as one of state law" (4/23/04 Tr. at 49:4–7); second, that Dreher's appellate counsel made a "tactical decision" to present Dreher's challenge to the admissibility of Dr. Tucker's testimony as a state law evidentiary issue (4/23/04 Tr. at 57:10–22 (appellate counsel "did not view the admission of Dr. Tucker's testimony as a subject to be litigated as an independent federal Constitutional issue")); third, that "the admission of arguably unreliable scientific evidence ... does not violate due process as long as the defendant has had a fair opportunity to counter it" (4/23/04 Tr. at 52:9–12); and, fourth, that Dreher had failed to demonstrate that a constitutional challenge to the admission of Dr. Tucker's testimony would have been successful "or led to a different result had he raised it earlier" (4/23/04 Tr. at 53:8–14). Judge Ahto also rejected Dreher's argument that, based on the State's shift in position regarding exhaustion, the State should be equitably estopped from asserting the five-year time bar set forth in New Jersey Court Rule 3:22–12.[8]

---

**6.** "Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey." N.J. Ct. R. 3:22–4.

**7.** "A petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said

time was due to defendant's excusable neglect." N.J. Ct. R. 3:22–12(a).

**8.** Judge Ahto said:

As to the five-year bar for ... filing this application, the argument really is made that ... the State is equitably estopped from raising that bar because at one point the State ... conceded that the defendant had exhausted state court remedies.... But there's a bar for a reason. And the equitable estoppel argument is an appealing argument and counsel stands before me today and said there was reliance upon it, but there's nothing pointed out to me specifically to show that there was reliance upon anything the State had done or the position they had taken. Rather, as the Third Circuit pointed out the defendant had not exhausted his issues in the state court, and in my view once having pointed it out the argument obviously is ... oh no, we

### 5. The 2005 Decision of the Appellate Division Affirming the Denial of Post–Conviction Relief

The Appellate Division affirmed the denial of post-conviction relief, stating that "Judge Ahto determined that defendant's PCR claims were procedurally barred and that each of defendant's claims lacked merit. These conclusions by the trial judge are fully supported by the record." (Slip Op. at 9.) The Appellate Division went on to say that

> Judge Ahto also concluded that defendant's PCR claims are time-barred, and that the procedural bar of Rule 3:22–12(a) has caused no injustice.... Here, the judgment of conviction, following defendant's second trial, was entered on June 16, 1995. Defendant's petition for a writ of habeas corpus was filed in the United States District Court on October 21, 1998, but his PCR petition was not filed in the Law Division until August 6, 2003—more than eight years after his conviction.... We agree that defendant has failed to establish justification for relaxing the time bar.

(Slip Op. at 12–14.) After concluding that Dreher had not established the basis for a new trial, the Appellate Division affirmed the denial of post-conviction relief. The Supreme Court of New Jersey denied certification without an opinion.

### 6. The District Court's 2006 Decision Dismissing Dreher's Petition on the Merits

Dreher returned to the District Court and filed a motion to reinstate his habeas petition. The State cross-moved to vacate the stay and for dismissal of the petition as untimely pursuant to 28 U.S.C. § 2244(d) [9] or as procedurally defaulted. *Ortiz*, 2006 WL 1281251 at *1. After summarizing the complicated procedural history of the case, the District Court recognized that our previous panel had instructed it to "vacate its [2001] order and dismiss the petition for habeas corpus without prejudice.... However, the Petitioner moved, and the State consented, to stay and hold in abeyance the proceedings in the interest of resolving this matter as promptly as possible once State remedies were exhausted." *Id.* at *2 n. 4. The District Court then said that

> If the petition had been dismissed outright at that time, it is likely that even if Petitioner exhausted his State remedies the statute of limitations provision of 28 U.S.C. § 2244(d) would have prevented him from filing a new § 2254 habeas petition, thus defeating the intent of the Court of Appeals that, if he met the exhaustion requirements, Petitioner could proceed on the merits.

*Id.*

The Court next analyzed the timeliness of Dreher's petition, beginning with the date that the United States Supreme Court denied his petition for a writ of certiorari, June 22, 1998. *Id.* at *3. Because Dreher filed his petition in the District Court on October 21, 1998, the Court concluded that it was filed "well within the 1–year period" set forth in § 2244. *Id.*

---

relied up[on] that. That's why we didn't bring it up sooner. I can't make that finding based upon the record I have, and I won't, although it's a very appealing argument. So in my view the five-year bar is also applicable. So having said all of that I will deny the applications for the various reasons I've said.

(4/23/04 Tr. at 64:9–65:8.)

9. "A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." 28 U.S.C. § 2244(d)(1)(A).

The State argued that Dreher's petition was untimely because "vacating the stay and reinstating the petition must be accomplished within a 1–year period commencing October 6, 2003 [the date the United States Supreme Court denied certiorari from this Court's March 3, 2003 opinion]...." *Id.* The State also argued that Dreher's "PCR proceedings in the State Court did not toll the 1–year period under the provisions of § 2244(d)(2) [10] because only a 'properly filed' application" may do so, and Dreher's PCR application "was not properly filed as it was filed outside the 5–year time limit of [Rule 3:22–12(a) ]." *Id.* The District Court rejected that position. It concluded that "the fallacy of [the State's] argument lies in the fact that the petition, which is the subject of [Dreher]'s motion, is the petition that was timely filed on October 21, 1998. The events that have transpired since that date ... have had no effect on the timeliness of the petition's filing. It was timely then and it remains timely." *Id.*

Turning to exhaustion, the District Court said that Dreher's failure to exhaust should be excused because "cause and prejudice exist due to [Dreher]'s detrimental reliance on [the State's] initial concession regarding exhaustion of State remedies." *Id.* at *4. Again looking at the procedural history, the Court pointed out that Dreher had filed his petition on October 21, 1998, and the State had answered on February 16, 1999, in a way that conceded Dreher "had exhausted State remedies." *Id.* The Court noted that oral argument in Dreher's first appeal to the Third Circuit took place after the 5–year limitation period had expired and, "[a]t that time, upon being questioned *sua sponte* by the [Third Circuit], [the State]

changed [its] position, and argued that [Dreher] had not exhausted State remedies. By that time, it was too late for [Dreher] to take appropriate corrective action within the period mandated by New Jersey Court Rules." *Id.*

The District Court concluded that the State's "change of heart"—its saying first that Dreher had exhausted State remedies but then saying he had not—constituted cause, that is, "an objective factor external to the defense that impeded counsel's efforts to comply with the State's procedural rules." *Id.* The Court also concluded that Dreher demonstrated "prejudice in that if [the State's] position were accepted [Dreher] would be deprived of the opportunity to pursue a number of serious constitutional claims...." *Id.* Finally, the Court held that Dreher's procedural default was excused, and his junk science claim exhausted. *Id.* The Court referenced its July 17, 2001 opinion, in which it ruled against Dreher "on the merits of all twelve of his claims, including the junk science claim," and for the same reasons expressed therein dismissed Dreher's petition on the merits. *Id.*

## II. Discussion

In addition to reviewing the District Court's 2006 opinion, including its ruling on timeliness, we must examine whether the District Court erred in excusing any procedural default under the cause and prejudice standard.

### 1. Timeliness

When Dreher filed his habeas petition on October 21, 1998, he included the argument that his right to due process was violated by the admission of Dr. Tucker's testimony. The District Court addressed

---

10. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

the merits of that argument in its 2001 opinion. After the previous panel of our Court found that the junk science claim was unexhausted in 2003, the District Court granted Dreher's motion to stay the habeas proceedings and hold his petition in abeyance ("stay-and-abey") while he attempted to exhaust the junk science claim in the New Jersey courts.

"Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir.2004); *see also Benchoff v. Colleran*, 404 F.3d 812, 820 n. 6 (3d Cir. 2005) (endorsing "the option of '[s]taying a habeas petition pending exhaustion of state remedies' as a 'permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition,' rather than outright dismissal.") (citation omitted). The District Court was therefore correct to reject the State's strained argument that Dreher's junk science claim was somehow new and untimely. Dreher had timely presented in 1998 his federal due process challenge to the admission of Dr. Tucker's testimony, as

evidenced by the fact that the District Court addressed that claim in terms of due process in its 2001 opinion. Because the District Court properly employed the "stay-and-abey" protocol that we have since endorsed, Dreher's petition was of course timely when it was revived before the District Court in 2006.

### 2. *Procedural Default*

We now turn to whether the District Court erred in holding that Dreher's procedural default was excused under the "cause and prejudice" standard. When a state court refuses to consider a petitioner's claim due to a violation of state procedural rules, federal courts are generally barred from considering the claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir.2004) (citations omitted).[11] In this case, Judge Ahto of the Law Division found that Dreher's junk science claim was procedurally defaulted under New Jersey Court Rule 3:22–4, because Dreher failed to raise a federal constitutional challenge on direct appeal in the New Jersey courts [12] and because it was filed outside of

---

**11.** To be beyond federal review, the procedural default at issue must also rest on "adequate and independent" state law grounds. *Johnson*, 392 F.3d at 556 (citing *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Dreher has not challenged the adequacy and independence of the state law grounds, nor could he have. As we noted in *Johnson*, New Jersey Court Rule 3:22–12, the same rule relied upon by the Superior Court and the Appellate Division in this case, is "an independent basis" upon which to deny post-conviction relief. *Id.* at 558. We also noted that Rule 3:22–12 is "firmly established and regularly followed" by the New Jersey courts, and when those courts "appl[y] their normal rule limiting the time to challenge a sentence to five years," as they did in this case, it "reflects an adequate state law ground." *Id.* at 561, 563. Finally, we held that "[t]he fact that both the New

Jersey trial court and Appellate Division made reference to the merits of the case as an alternative holding does not prevent us from finding procedural default." *Id.* at 558. Judge Ahto found Dreher's application for PCR procedurally barred and denied Dreher's junk science claim on the merits and the Appellate Division affirmed. Consistent with *Johnson*, even though the New Jersey courts reached the merits of Dreher's PCR application, we may still find that Dreher's petition is procedurally defaulted. *Id.*

**12.** Neither the District Court nor the previous panel of this Court addressed Dreher's failure to mount a federal constitutional challenge to the admission of Dr. Tucker's testimony on direct appeal in the New Jersey courts. In retrospect, it appears that the parties should have argued and we should have decided whether that failure was a procedural default.

the five-year time limit set forth in New Jersey Court Rule 3:22–12. Judge Ahto also rejected Dreher's argument that, because the State changed its position regarding exhaustion, the State was equitably estopped from asserting that his PCR application was time-barred by Rule 3:22–12. The Appellate Division affirmed.

The District Court afforded no deference to the findings and conclusions of the New Jersey courts, instead holding that the State's abrupt about-face regarding exhaustion constituted cause for the default because it was "an objective factor external to the defense that impeded counsel's efforts to comply with the State's procedural rules." *Ortiz*, 2006 WL 1281251 at *4. The Court also found that Dreher had demonstrated prejudice because, if the State's position were accepted, Dreher would never have the opportunity to pursue his constitutional claims, even though he had addressed them in his first filing.

While we recognize the intuitive appeal of the District Court's analysis of procedural default and cause and prejudice in this case, particularly in light of the State's "change of heart" on the question of exhaustion, we nevertheless conclude that the analysis is flawed. We have previously summarized the cause and prejudice tests as follows:

> The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). By way of example, the Court opined that showing a factual or legal basis for a claim was not reasonably available to counsel or showing interference by government officials sufficient to make compliance impracticable, would

constitute acceptable cause for federal habeas review of the defaulted claim. *Id.* . . .

> With regard to the prejudice requirement, the habeas petitioner must prove "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494, 106 S.Ct. 2639 (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. *Id.*

*Werts v. Vaughn,* 228 F.3d 178, 192–93 (3d Cir.2000) (emphasis added).

■ The events that transpired in this case do not rise to the level of cause and prejudice necessary to excuse Dreher's procedural default. Specifically, nothing in this case demonstrates that presenting a federal constitutional challenge to the admission of Dr. Tucker's testimony was impracticable on direct appeal. Judge Ahto correctly concluded that Dreher's "appellate counsel made an objectively reasonable 'tactical decision' to present [Dreher's] challenge to the admissibility of Dr. Tucker's time-of-death testimony as a state law evidentiary issue[,]" as opposed to presenting a federal constitutional challenge to the admission of that testimony when Dreher appealed his second conviction in the New Jersey courts. (Slip Op. at 10; 4/23/04 Tr. at 57:10–22.) The position that the State took regarding exhaustion in 2003 could not have affected that choice, as all of the information that Dreher needed to mount such an attack was available to him at the time of his direct appeal and while he was pursuing habeas relief. The District Court's focus on the exhaustion issue was, under these facts,

misplaced. Long before exhaustion became an issue, the admissibility of Dr. Tucker's testimony was a point of contention. There was no external impediment preventing Dreher's counsel from presenting the claim that the admission of Dr. Tucker's testimony violated Dreher's constitutional right to due process.

■ Even assuming Dreher could demonstrate cause, however, he cannot demonstrate actual prejudice—that is, "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Werts,* 228 F.3d at 193 (emphasis added) (citation omitted). The Appellate Division on direct review determined that, even if the admission of Dr. Tucker's testimony at trial was erroneous, such error was harmless because Dr. Tucker estimated the time of death by also looking at body temperature, degree of rigor mortis, and lividity. *Dreher,* 695 A.2d at 700. Further, as the Appellate Division said in connection with Dreher's PCR petition,

> We previously rejected defendant's claim that he is entitled to a new trial because of Dr. Tucker's time-of-death testimony, and on habeas review the [District Court] ruled that "the admission of Dr. Tucker's testimony did not violate petitioner's right to due process." ... Judge Ahto came to the same conclusion:
>
>> Dr. Tucker never attributed undue precision to the vitreous potassium test. He admitted that it's not precise, his estimate. The defense fully

cross-examined him on his methodology. The defendant was free to call his own pathologist to challenge what Dr. Tucker said. So in my view there has been no due process violation.

(Slip Op. at 11; *see also* 4/23/04 Tr. at 57:10–22 (Judge Ahto finding that Dreher had not demonstrated that a constitutional challenge to the admission of Dr. Tucker's testimony would have been successful "or led to a different result had he raised it earlier.").) The District Court effectively agreed with that conclusion, and so do we. Dreher cannot prove that the admission of that testimony "infect[ed] his entire trial with error of constitutional dimensions." *Werts,* 228 F.3d at 193.

We therefore conclude that the District Court erred in holding that the junk science claim was not procedurally defaulted. However, because the District Court ultimately dismissed Dreher's petition on the merits, we arrive at essentially the same point and therefore affirm the dismissal of Dreher's junk science claim, but for the reasons stated herein.

### 3. Dreher's Remaining Claims of Constitutional Error

Dreher's remaining claims of constitutional error have been thoroughly analyzed by the New Jersey courts and by the District Court in its 2001 opinion. In 2006, the District Court again denied Dreher's petition on the merits by referencing its 2001 opinion. We have carefully reviewed those decisions and the arguments presented on appeal, and, mindful of the scope of our habeas review [13], are satisfied that

---

13. An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

Dreher has not raised any meritorious claims of constitutional error in this appeal.

### III. Conclusion

For the foregoing reasons, we hold that Dreher's claim with respect to Dr. Tucker's testimony is procedurally defaulted, and we agree with the District Court's decision that Dreher's remaining claims lack merit. Therefore, we will affirm the District Court's order dismissing Dreher's petition for a writ of habeas corpus.

mined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).